UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| VANCE ROY CLARK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cv-01284-SRC |
| | ) | |
| SUPERINTENDENT DORIS FALKENRATH, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

## Memorandum and Order

After being convicted of drug possession and distribution, Vance Roy Clark appealed his conviction, moved for post-conviction relief, and filed multiple state habeas petitions. The state courts denied all of his motions. Now, he brings a petition for writ of habeas corpus under 28 U.S.C. § 2254, re-raising numerous claims he presented to the state courts. Because the Missouri courts' denials of these same claims were not contrary to, or an unreasonable interpretation of, clearly established federal law, the Court denies Clark's petition.

## I.    Background

### A.    State proceedings

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court," the Court presumes the correctness of "a determination of a factual issue made by a State court." 28 U.S.C. § 2254(e)(1). A petitioner bears the "burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* The Missouri Court of Appeals described the relevant facts as follows:

> The State charged [Clark], as a persistent offender, with three counts of distribution of heroin (Counts I-III), one count of possession of methamphetamine (Count IV), one count of possession of oxycodone (Count V), and one count of

possession of drug paraphernalia (Count VI).  Viewed in the light most favorable to the verdict, the evidence at trial showed the following.

On February 13, 2015, troopers with the Missouri State Highway Patrol set up a controlled buy with a confidential informant, Mark Canterbury (Canterbury). Canterbury told the troopers he regularly purchased heroin from [Clark] and had arranged to buy one gram from [Clark] for $200.  The troopers drove to Canterbury's mother's house, searched Canterbury, and provided Canterbury with a recording device and money to purchase heroin from [Clark] and another seller. [Clark] arrived driving a white Cadillac with two other people in the car. Canterbury got into the car and purchased some heroin from a woman in the car and .97 grams of heroin from [Clark].

On February 17, 2015, Canterbury set up another buy with [Clark]. Troopers picked up Canterbury, searched him, gave him a recording device and money for the buy, and drove him to [Clark]'s house at 3416 Hildebrecht Road. Canterbury went into [Clark]'s house and purchased 0.54 grams of heroin for $200.

On February 18, 2015, Canterbury set up a meeting with [Clark] to purchase 15 grams of heroin for $1,800.  Troopers again picked up Canterbury, searched him, and drove him to [Clark]'s residence.  The troopers outfitted Canterbury with a recording device and provided the money for the transaction.  Canterbury purchased approximately 14 grams of heroin from [Clark] for $1,710.

That day, troopers executed a search warrant at [Clark]'s residence at 3416 Hildebrecht Road.  The troopers knocked and announced their presence.  [Clark] yelled, "I'm here" but refused to open the door.  The troopers broke down the door and found [Clark] lying on the floor of the master bedroom. The troopers searched [Clark], finding a $10 bill in his pocket with serial numbers matching one of the bills the troopers had given Canterbury to make the controlled buy earlier that day.

During a search of the house, troopers recovered digital scales in the living room; the bottom of a soda can used for heating heroin for injection; a used syringe on top of a bag of syringes and a spoon with heroin residue in a drawer in the master bedroom; a baggie containing methamphetamine and oxycodone pills behind the bathroom vanity; and a glass smoking device in the bathroom.

The jury found [Clark] guilty on all counts.  The court sentenced [Clark] to 30 years' imprisonment each on Counts I and II, 15 years' imprisonment each on Counts III through V, and one year in jail on Count VI.  The court ordered the sentences for Counts I and II to run consecutively to each other but concurrent to the remaining sentences.

Doc. 15-10 at 2–3.[1]  Sentencing occurred on January 13, 2017.  Doc. 15-3 at 16.

After, Clark filed numerous post-conviction motions.  Because Superintendent Doris Falkenrath raises timeliness as an issue, the Court provides relevant dates pertaining to these numerous motions.  First, on February 27, 2017, Clark filed a belated Notice of Appeal, which

---

[1] The Court cites to page numbers as assigned by CM/ECF.

the Court of Appeals accepted. *State v. Clark*, No. ED105347 (Mo. Ct. App.). In his appeal, Clark alleged five errors. Doc. 1-7 at 23–24; *see Clark*, No. ED105347. About a year later, the Missouri Court of Appeals affirmed the trial-court decision, addressing and denying each of Clark's five points. Docs. 15-9, 15-10. Clark then moved for rehearing/transfer to the Missouri Supreme Court twice. *Clark*, No. ED105347. The court denied both motions. *Id.*

After this, Clark filed "Missouri Criminal Procedure Form No. 40" for post-conviction relief. Doc. 1 at 3; doc. 15-13 at 50–101; *see Clark v. State*, No. 18SF-CC00110 (Mo. Ct. App.). And then, Clark filed an amended motion. *Clark*, No. 18SF-CC00110; doc. 15-13 at 112–49. In it, he raised six claims of ineffective assistance of trial counsel. Doc. 1-10 at 30; *see also* doc. 15-13 at 122–47. About two years later, the court denied Clark's motion. *Clark*, No. 18SF-CC00110. And soon after, Clark appealed the denial. *Clark v. State*, No. ED109130 (Mo. Ct. App.). After about another year, the appellate court affirmed the denial. *Id.* Then on November 29, 2021, the court issued its mandate, and Clark immediately moved to recall the mandate. *Id.* Two months later, the court denied this motion as well. *Id.*

During this time, Clark also brought a state habeas petition. *Clark v. Ramey*, No. 21AC-CC00149 (Cole Cir. Ct.). The court denied his petition, and then Clark appealed the denial. *Id.*; *Clark v. Falkenrath*, WD84860 (Mo. Ct. App.). In his appeal, Clark raised six points. Doc. 1-9 at 10–13; *see Clark*, No. WD84860. Soon after, the court denied Clark's petition. *See Clark*, No. WD84860.

In 2022, Clark filed a second writ-of-habeas-corpus petition in state court. *Clark v. Falkenrath*, No. 22AC-CC00090 (Cole Cir. Ct.). And like his previous filing, the court denied his petition, *id.*, and the appellate court affirmed the denial, *Clark v. Falkenrath*, No. WD85478 (Mo. Ct. App.). The appellate court issued its mandate on January 11, 2023. *Id.*

3

Six months later, Clark filed a writ of habeas corpus in the Missouri Supreme Court, raising two points. Doc. 1-12 at 11–17; *see Clark v. Falkenrath*, No. SC100155 (Mo.). The Supreme Court denied his petition shortly thereafter. *Clark*, No. SC100155.

## B.    Federal proceeding

On September 18, 2023, Clark placed in the prison mailing system a federal writ-of-habeas-corpus petition. Doc. 1 at 17. In it, he raises five grounds for relief by incorporating several points previously raised in his various state filings: (1) "POINTS I–VI are incorporated herein by reference as if fully set forth herein from BRIEF FOR APPELLANT filed in Appeal No. ED105347 (Attachment G)," *id.* at 5; *see also* doc. 1-7 at 23–24; (2) "POINTS VII–XII are incorporated herein by reference as if fully set forth herein from his Writ of Habeas Corpus filed in No. WD84860 (as POINTS I–VI therein). Attachment I," doc. 1 at 7; *see also* doc. 1-9 at 10–13; (3) "POINTS XIII–XIV are incorporated herein by reference as if fully set forth herein from Writ of Habeas Corpus No. SC100155 (as POINTS I–II therein). Attachment L," doc. 1 at 8; *see also* doc. 1-12 at 11–17; (4) "POINTS XV–XX are incorporated herein by reference as if fully set forth herein from the Rule 29.15 Amended Motion filed in Case No. 18SF-CC00110 on October 22, 2018," doc. 1 at 10; *see also* doc. 1-10 at 30; and (5) "POINT XXI VIOLATION OF DUE PROCESS," doc. 1 at 12. The Court includes the full text of each incorporated claim in Appendix A.

Although Clark claims to raise 21 points, the referenced filings contain only 20. *Compare* doc. 1 at 5 (asserting doc. 1-7 contains six points) *with* doc. 1-7 at 23–24 (containing only five points). For ground one, he complains of five alleged trial-court errors. *See* doc. 1-7 at 23–24. For grounds two and four, he raises numerous ineffective-assistance-of-counsel claims. *See* doc. 1-9 at 10–13; doc. 1-10 at 30; *see also* doc. 15-13 at 122–47. For ground three, he

4

alleges two more Missouri-court errors. *See* doc. 1-12 at 11–17. And for ground five, he brings a due-process claim. Doc. 1 at 12.

## II.    Standard

A state prisoner who seeks relief under 28 U.S.C. § 2254 must prove that he is "in custody in violation of the Constitution or laws or treaties of the United States." To obtain relief under section 2254, a petitioner must establish that the state-court proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To warrant relief, a state court's decision must be "more than incorrect or erroneous"; it "must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). A petitioner must also show that equitable considerations favor relief. "[E]ven a petitioner who prevails under [the Antiterrorism and Effective Death Penalty Act] must still today persuade a federal habeas court that 'law and justice require' relief." *Brown v. Davenport*, 596 U.S. 118, 134 (2022) (citations omitted); *see also* 28 U.S.C. § 2243 ("A court, justice, or judge entertaining an application for a writ of habeas corpus . . . shall summarily hear and determine the facts, and dispose of the matter as law and justice require."). Historically, "the States' 'powerful and legitimate interest in punishing the guilty'" stands as the most important of these equitable considerations. *Brown*, 596 U.S. at 132 (quoting *Calderon v. Thompson*, 523 U.S. 538, 556 (1998)).

## III.    Discussion

Falkenrath objects to Clark's petition on three general grounds. First, Falkenrath argues that Clark failed to timely file his petition. Second, Falkenrath argues that Clark failed to file a

properly formatted petition. Third, Falkenrath analyzes each claim and argues that none

warrants relief. The Court addresses the arguments below.

### A.    Timeliness

First, Falkenrath argues that the Court should dismiss Clark's petition as untimely.

Doc. 15 at 7–10. Having reviewed the record, the Court disagrees.

When filing a habeas petition, a prisoner must file within one year from "the judgment of

a State court." 28 U.S.C. § 2244(d)(1). But the time may be tolled: "[t]he time during which a

properly filed application for State post-conviction or other collateral review with respect to the

pertinent judgment or claim is pending shall not be counted toward any period of limitation

under this subsection." *Id.* at § 2244(d)(2). "[A]n application is pending as long as the ordinary

state collateral review process is 'in continuance'—*i.e.*, 'until the completion of' that process. In

other words, until the application has achieved final resolution through the State's post-

conviction procedures, by definition it remains 'pending.'" *Carey v. Saffold*, 536 U.S. 214, 219–

20 (2002). Further, "an application is 'properly filed' when its delivery and acceptance are in

compliance with the applicable laws and rules governing filings. These usually prescribe, for

example, the form of the document, the time limits upon its delivery, the court and office in

which it must be lodged, and the requisite filing fee." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000)

(citations and emphasis omitted).

Here, sentencing occurred on January 13, 2017. Doc. 15-3 at 16. Considering Clark's

various appeals and motions, Falkenrath begins her statute-of-limitations calculation on

November 29, 2021: the date the Missouri Court of Appeals issued its mandate after denying

Clark's appeal. Doc. 15 at 9; *see Clark*, No. ED109130. With one exception, the Court agrees

that Clark tolled this time by properly filing an application for state post-conviction review. *See*

*Carey*, 536 U.S. at 219–20.  The exception:  Clark filed his original Notice of Appeal 35 days late—on February 27, 2017.  *See Clark*, No. ED105347; *see* Missouri Supreme Court Rule 30.01, 81.04 (providing defendants 10 days to file an appeal).  Although the Missouri Court of Appeals accepted the late notice, "an application is not 'pending' between the expiration of the time for appeal and the filing of a petition for belated appeal."  *Streu v. Dormire*, 557 F.3d 960, 966 (8th Cir. 2009) (citations omitted).  For this calculation, the Eighth Circuit includes the day of filing as a "not pending" day.  *See, e.g.*, *id.* at 967 (finding that "AEDPA's limitations period was not tolled in [petitioner]'s case during the 116 days between November 7, 2005, and March 3, 2006" even though only 115 days fall between those two dates, meaning the court included the last day in the calculation).  Thus, Clark failed to toll the 35 days.

Further, the Court disagrees with Falkenrath's beginning her calculation on November 29, 2021.  *See* doc. 15 at 9.  When the court issued its mandate, Clark immediately moved to recall it.  *Clark*, No. ED109130.  And a properly filed motion to recall the mandate tolls the statute of limitations.  *Bishop v. Dormire*, 526 F.3d 382, 383 (8th Cir. 2008).  Thus, Clark's time remained tolled for the two months of his pending recall, which resulted in denial.  *Clark*, No. ED109130.

Additionally, Falkenrath fails to toll the full time of Clark's habeas petition.  About a month after the recall denial, Clark, on February 28, 2022, filed a second Rule 91 motion.  *Clark*, No. 22AC-CC00090.  The court denied the motion, he appealed, and the appellate court affirmed.  *Id.*; *Clark*, No. WD85478.  The appellate court then issued its mandate on January 11, 2023.  *Id.*  These Rule 91 proceedings also tolled Clark's time.  *See Polson v. Bowersox*, 595 F.3d 873, 875 (8th Cir. 2010) ("Rule 91 proceedings [are] 'other collateral review with respect to the pertinent judgment or claim.'").

Falkenrath argues that Clark's June 23, 2022 petition "was not properly filed . . . because the petition was filed as an appeal from the denial of habeas petition . . . , and there is no appeal from the denial of habeas petition in Missouri."  Doc. 15 at 10 (emphasis omitted).  The Supreme Court deems an application "properly filed" "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings."  *Artuz*, 531 U.S. at 8 (emphasis omitted).  And the Court distinguishes properly filed petitions from meritless claims:  "the question whether an application has been 'properly filed' is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar."  *Artuz*, 531 U.S. at 9 (emphasis omitted).

Here, the Missouri Court of Appeals accepted Clark's petition, analyzed his claims, and then denied each.  *See* doc. 15-38.  Falkenrath points to no authority deeming such petitions "not properly filed."  And the given "considerations of comity," the Court declines to do so now. *Streu*, 557 F.3d at 963.  "AEDPA's tolling provision was meant to 'encourage petitioners to seek relief from state courts in the first instance.'"  *Id.* (quoting *Rhines v. Weber*, 544 U.S. 269, 276 (2005)); *cf. id.* at 964 ("If Missouri courts have decided to entertain motions to reopen post-conviction proceedings despite the effect on the finality of their own judgments, then federal courts arguably should respect that decision by tolling the statute of limitations while such motions are pending." (citations omitted)).

Overall, Falkenrath argues Clark needed to file his federal habeas petition by November 30, 2022, and that Clark filed his petition 294 days late—on September 20, 2023.  Doc. 15 at 9–10.  But this calculation fails to toll the 58 days for Clark's recall and the 317 days for Clark's second Rule 91 petition.  With this, the Court declines to dismiss Clark's petition as untimely.

**B.    Proper form**

Second, Falkenrath argues that Clark's petition "is not proper" because he incorporates claims from several state-court pleadings.  Doc.  15 at 19 (citing *Adams v. Armontrout*, 897 F.2d 332, 333 (8th Cir. 1990)).  While Falkenrath raises this issue, she asks for no relief:  she asks the Court neither to return nor to dismiss the petition for this reason.  *See id.*

Rule 2(c) of the *Rules Governing Section 2254 Cases in the United States District Courts* requires a petitioner to "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground," among other things.  In *Adams*, the Eighth Circuit addressed a prior version of this rule and held that "Rule 2(c) explicitly requires that a petitioner summarize the facts supporting each of the alleged grounds for relief.  [A petitioner]'s general reference to the transcripts, case records, and briefs on appeal patently fails to comply with Rule 2(c)." *Adams*, 897 F.2d at 333; *see also id.* ("Section 2254 Rule 2(c) provides in relevant part that the petition . . . 'shall set forth in summary form the facts supporting each of the grounds thus specified.'" (emphasis removed)).  When the petitioner fails to satisfy Rule 2(c), the district court may return the petition.  *Id.*; *see also id.* at 334 (providing petitioner 60 days to refile his petition in proper form).

Here, Clark fails to identify the specific claims and facts in his habeas form.  *See generally* doc. 1.  Rather, he "incorporated" claims and facts from his various state-court filings and then attached the filings to his petition.  *See id.* at 5–12; *see also* docs. 1-1–1-16.  Even so, Falkenrath has responded to Clark's numerous claims.  *See* doc. 15 at 20–33.  Considering Falkenrath's response brief, the Court declines to now return Clark's petition.  *See, e.g.*, *Coleman v. Redington*, No. 4:18-CV-1750-RLW, 2022 WL 225656, at *2 (E.D. Mo. Jan. 26, 2022) ("In the interests of justice, the Court will liberally construe the Petition despite Petitioner's failure to

9

comply with Rule 2(c), particularly where Respondent did not move to dismiss on this basis and was able to discern and respond to the issues Petitioner raises.").  Therefore, the Court now turns to Clark's individual claims.

### C.    Individual claims

#### 1.    Ground 1

As ground 1, Clark claims to incorporate six points from a previous state filing, but the filing contains only five points.  *Compare* doc. 1 at 5 (asserting doc. 1-7 contains six points) *with* doc. 1-7 at 23–24 (containing only five points).  The Court addresses the five points below.

#### a.    Point 1:  improperly sustaining the State's objection

In point 1, Clark argues that the trial court erred by sustaining the State's objection during the cross-examination of Canterbury, the criminal informant.  Doc. 1-7 at 23.  The Missouri Court of Appeals previously rejected this claim, finding that Clark failed to preserve it and that the trial court did not plainly err.  Doc. 15-10 at 5–8.  The Court finds this point procedurally defaulted.

 "[A]ny claims not properly raised before the state court are procedurally defaulted." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (first citing *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992); then citing *Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir. 1996) (en banc)).  Further, "a federal habeas court cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed that claim for plain error." *Clark v. Bertsch*, 780 F.3d 873, 874 (8th Cir. 2015) (citing *Hayes v. Lockhart*, 766 F.2d 1247, 1253 (8th Cir. 1985)).  To avoid this procedural bar, the petitioner must "establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Moore-El*, 446 F.3d at 896 (citing *Sawyer*, 505 U.S. at 338–39).

The state appellate court found that Clark "failed to preserve his claim of error regarding cross-examination by failing to raise this specific issue in his motion for new trial."  Doc. 15-10 at 6.  Specifically, Clark provided different rationales in his original motion and subsequent appeal.  *Id.*  Because of this, the court then reviewed the unpreserved claim "for plain error only."  *Id.* (citing *State v. Howery*, 427 S.W.3d 236, 248 (Mo. Ct. App. 2014)).  Although the state court analyzed this claim, this Court "cannot reach [this] unpreserved and procedurally defaulted claim."  *Bertsch*, 780 F.3d at 874 (citing *Hayes*, 766 F.2d at 1253).

Further, Clark presents no argument to excuse his procedural default.  As Clark merely incorporates his state filings, he fails to address the present standard.  And he fails to "establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice."  *Moore-El*, 446 F.3d at 896 (citing *Sawyer*, 505 U.S. at 338–39); *see also Cagle v. Norris*, 474 F.3d 1090, 1099 (8th Cir. 2007) (requiring prisoner to "demonstrate cause" and holding that "[i]f a prisoner fails to demonstrate cause, the court need not address prejudice" (citations omitted)); *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006) ("[The fundamental-miscarriage-of-justice] exception requires a habeas petitioner to present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." (citation omitted)).  Thus, the Court denies point 1.

### b.    Point 2:  insufficient evidence for knowing possession

In point 2, Clark argues that the trial court erred in denying his acquittal motion "because the State failed to introduce any evidence that Clark knowingly possessed methamphetamine . . . , oxycodone . . . , or syringes."  Doc. 1-7 at 23.  The Missouri Court of Appeals rejected this claim, doc. 15-10 at 8–10, and this Court does the same.

For insufficient-evidence claims, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt." *Bookwalter v. Vandergriff*, 73 F.4th 622, 625 (8th Cir. 2023) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). With this, a petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 324). But "[i]f the jury's inferences are not 'so insupportable as to fall below the threshold of bare rationality,' then . . . [the] claim must fail." *Id.* (emphasis omitted) (quoting *Coleman v. Johnson*, 566 U.S. 650, 656 (2012) (per curiam)).

Under this analysis, Clark must overcome "two layers of judicial deference." *Id.* First, the jury determines "what conclusions to draw from the evidence, and on direct appeal, a reviewing court will not set aside a jury's verdict unless no rational trier of fact could have agreed with the jury." *Id.* Second, on habeas review, this Court "will not overturn a state-court decision rejecting an evidence-sufficiency challenge unless that decision was objectively unreasonable." *Id.* But because he merely incorporated his state-court filings, Clark fails to explain how he overcomes the "high bar in [this] federal habeas proceeding[]." *Id.* (quoting *Coleman*, 556 U.S. at 651).

The Missouri Court of Appeals identified multiple facts supporting Clark's knowing possession of methamphetamine, oxycodone, and syringes:

> Here, the evidence revealed [Clark] lived in and sold drugs from the home. The syringes were found in a drawer in the master bedroom, the same room in which the troopers found [Clark] lying on the floor. The methamphetamine, oxycodone, and a glass smoking device were all located in the bathroom, a room [Clark] had access to as an occupant of the home. A digital scale along with a spoon and a soda can, both used to ingest heroin, were also found in the house. When police executed the search warrant, [Clark] refused to open the door for the troopers, suggesting [Clark] knew of the presence of illegal substances within the house.

12

Doc. 15-10 at 10.  With these multiple facts supporting possession, the Court cannot say that the Missouri Court of Appeals' decision was "objectively unreasonable."  *Bookwalter*, 73 F.4th at 625.  Thus, the Court denies point 2.

### c.    Point 3:  insufficient evidence connecting syringes to methamphetamine

In point 3, Clark brings another insufficient-evidence claim:  the trial court erred in denying his acquittal motion "because the State failed to introduce evidence to . . . establish that Clark intended to use the syringes for methamphetamine."  Doc. 1-7 at 23.  The Missouri Court of Appeals also rejected this argument, doc. 15-10 at 11–12, and this Court does the same.

The Court must uphold the state court's decision "unless that decision was objectively unreasonable."  *Bookwalter*, 73 F.4th at 625.  The Missouri Court of Appeals recounted how "[s]yringes, other drug paraphernalia, and methamphetamine were discovered by the police inside the house."  Doc. 15-10 at 12.  And it determined that "[w]hile the State presented evidence suggesting the syringes could be used to inject heroin, a reasonable jury could conclude [Clark] intended to use the syringes to inject methamphetamine."  *Id*.  Thus, "[t]he presence of both the syringes and methamphetamine in the house was sufficient to support the conviction of possession of drug paraphernalia with intent to use."  *Id.*  With these facts and inferences, the Court cannot say that the Missouri Court of Appeals' decision was "objectively unreasonable."  *Bookwalter*, 73 F.4th at 625.  Therefore, the Court denies point 3.

### d.    Point 4:  improper joinder

In point 4, Clark argues that the trial court erred in denying his motion alleging improper joinder because "the possessory crimes . . . were not 'connected' with the distribution crimes . . . , in that they arose on different dates, and were of a substantially different character."

Doc. 1-7 at 24.  The Missouri Court of Appeals rejected this claim, doc. 15-10 at 12–14, and this Court does the same.

"Improper joinder does not, in itself, violate the Constitution.  Rather, misjoinder would rise to the level of constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."  *United States v. Mann*, 701 F.3d 274, 290 (8th Cir. 2012) (quoting *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986)).  Also, "[t]o obtain habeas relief for failure to sever, [the petitioner] must show that 'the failure to grant severance rendered the trial "fundamentally unfair."'"  *Wharton-El v. Nix*, 38 F.3d 372, 374 (8th Cir. 1994) (quoting *Hollins v. Dep't of Corrs.*, 969 F.2d 606, 608 (8th Cir. 1992)).

First, the court determined that joinder was proper:

> Joinder of the charges was proper in this case because [Clark]'s possession offenses were connected to the distribution charges, in that the methamphetamine, oxycodone, and syringes possessed by [Clark] were discovered during execution of the search warrant and upon [Clark]'s arrest for distribution of heroin and were part of the series of events leading to the distribution charges.

Doc. 15-10 at 13–14.  Next, the court determined Clark failed to demonstrate any prejudice: "The evidence in this case was straightforward and there was no risk of the jury confusing the evidence or the charges.  The jury received separate verdict-directing instructions and was specifically instructed to consider each offense separately."  *Id.* at 14.

Clark fails to address the present standard, failing to show "prejudice so great as to deny [him] his Fifth Amendment right to a fair trial."  *Mann*, 701 F.3d at 290 (quoting *Lane*, 474 U.S. at 446 n.8).  And he fails to show a "fundamentally unfair" trial.  *Wharton-El*, 38 F.3d at 374 (quoting *Hollins*, 969 F.2d at 606).  Thus, the Court denies point 4.

### e.    Point 5:  speedy-trial violation

In point 5, Clark argues the trial court erred in denying his motion to dismiss for lack of a speedy trial.  Doc. 1-7 at 24.  Specifically, he complains of the "540-day delay from the date of

arrest to trial, and a 275-day delay from indictment to trial." *Id.* The Missouri Court of Appeals rejected this claim, doc. 15-10 at 14–19, and this Court does the same.

In *Barker v. Wingo*, "the Supreme Court explained that speedy trial cases are to be evaluated by a balancing test 'that necessarily compels courts to approach speedy trial cases on an ad hoc basis.'" *Taylor v. Roper*, 561 F.3d 859, 863 (8th Cir. 2009) (quoting *Barker v. Wingo*, 407 U.S. 514, 529 (1972)). For this, the Supreme Court provided four "factors which courts should assess in determining whether a particular defendant has been deprived of his right" to a speedy trial: (1) "[l]ength of delay," (2) "the reason for the delay," (3) "the defendant's assertion of his right," and (4) "prejudice to the defendant." *Barker*, 407 U.S. at 530 (citations omitted); *see also Matthews v. Lockhart*, 726 F.2d 394, 396 (8th Cir. 1984) (applying the "four[-]part test enunciated by the Supreme Court in *Barker*" (citing *Barker*, 407 U.S. 514)).

Here, Clark was arrested on February 18, 2015; a day later, the State filed a complaint against him. Doc. 15-10 at 14. A month later, on March 18, Clark's probation from a previous case was revoked, resulting in Clark's incarceration. *Id.* After the court dismissed Clark's case without prejudice in September, the State refiled charges against Clark on November 10. *Id.* About a year after his arrest, on February 26, 2016, Clark filed a request under the Uniform Mandatory Disposition of Detainers Law, *id.* at 15, which requires that "the indictment . . . be brought to trial" within 180 days after a UMDDL request, Mo. Rev. Stat. § 217.460 (2009). Then in the beginning of August, Clark moved to dismiss his case for violating his constitutional right to a speedy trial. Doc. 15-10 at 15. On August 16, the court denied Clark's motion and started trial—within the 180-day period required by the UMDDL. *Id.*

Based on these facts and applying the four *Barker* factors, the Missouri Court of Appeals rejected Clark's speedy-trial-violation claim. Doc. 15-10 at 15–19. For the first factor, the court

agreed with Clark and found the 18-month delay between arrest and trial "presumptively prejudicial." *Id.* at 16. With this, the court proceeded to the remaining factors. *Id.*

For the second factor, the court found that the delays weighed against the State "but not heavily" because the delays were "for neutral reasons." *Id.* at 17. The court attributed the following delays to the State: (1) delay between Clark's arrest and initial preliminary hearing; (2) delay between initial preliminary hearing and the trial court's dismissal of the case without prejudice; and (3) delay between November 2015 indictment and June 2016 jury-trial setting. *Id.* But Clark did not allege and the court did not find that the State delayed "to gain a tactical advantage." *See Matthews*, 726 F.2d at 397 (citing *Barker*, 407 U.S. at 531). On review, this Court agrees that these delays do not weigh heavily against the State. *See id.* (Contrasting "[d]elays that result directly from the press of other business affecting defense counsel" with intentional delays "to gain a tactical advantage" (citations omitted)); *see also Barker*, 407 U.S. at 531 ("A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.").

Further, the state appellate court attributed one delay to Clark: the delay between the initial trial date and the new trial date. Doc. 15-10 at 17–18. After Clark obtained new trial counsel, counsel requested a continuance to prepare for trial. *Id.* This resulted in a two-month delay. *Id.* at 18.

For the third factor, the court found that Clark's "failure to assert his constitutional speedy trial right until almost 18 months after his arrest and less than 2 weeks before the date of

trial weigh[ed] against his claim." *Id.*  While Clark filed a UMDDL request on February 26, 2016, he did not assert his constitutional speedy-trial right until August 4, 2016.  *Id.*  Trial occurred two weeks later.  *Id.*  Because of this, the Court agrees the third factor weighs against Clark.

For the fourth factor, the court assessed "the interests the right was designed to protect." *Id.*; *see Barker*, 407 U.S. at 532 ("[The Supreme] Court has identified three such interests:  (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.").  First, the court found that "[a]lthough [Clark] was incarcerated pending trial, this was the result of the revocation of his probation on his previous case and it cannot be said that the charges in this case resulted in oppressive pretrial incarceration."  Doc. 15-10 at 18–19.  Second, "[Clark did] not allege he suffered any extraordinary anxiety or concern from the delay."  *Id.* at 19.  Finally, "[Clark]'s contention that his defense was actually impaired by the delay is speculative and unsupported by the record."  *Id.*

Overall, the Court finds that the Missouri Court of Appeals' determination "was neither contrary to nor an unreasonable application of federal law."  *Taylor*, 561 F.3d at 863.  Thus, the Court denies point 5.

### 2.    Grounds 2 and 4

In grounds 2 and 4, Clark raises six ineffective-assistance-of-counsel claims each.  But one of the ground-2 claims overlaps with a ground-4 claim.  The Court addresses the claims below, combining related claims.

To succeed on an ineffective-assistance-of-counsel claim, a petitioner must demonstrate that "counsel's performance was deficient" and that "the deficient performance prejudiced the

defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "Surmounting *Strickland*'s high

bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) (citations omitted).

Counsel should be "strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S.

at 690.  For federal courts reviewing state proceedings, "[t]he pivotal question is whether the

state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*,

562 U.S. 86, 101 (2011).  "This is different from asking whether defense counsel's performance

fell below *Strickland*'s standard." *Id.*  To grant relief, a federal habeas court cannot simply

disagree with a state court but must find the state court's adjudication objectively unreasonable.

*Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  Review is thus "doubly deferential," requiring a

"highly deferential look at counsel's performance through deferential lens of § 2254(d)." *Cullen*

*v. Pinholster*, 563 U.S. 170, 190 (2011) (internal quotations omitted).

To prevail on *Strickland*'s performance prong, a petitioner must overcome the "'strong

presumption' that counsel's representation was within the 'wide range' of reasonable

professional assistance" and must establish that counsel's performance "amounted to

incompetence." *Harrington*, 562 U.S. at 104−05 (quoting *Strickland*, 466 U.S. at 689−90).

Further, "strategic choices made after thorough investigation of law and facts relevant to

plausible options are virtually unchallengeable; and strategic choices made after less than

complete investigation are reasonable precisely to the extent that reasonable professional

judgments support the limitations on investigation." *Strickland*, 466 U.S at 690–91.

To prevail on *Strickland*'s prejudice prong, a petitioner must demonstrate "a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Id.* at 694.  For a petitioner to succeed on the prejudice prong, counsel's errors

must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."
*Strickland*, 466 U.S. at 687. "[T]he difference between *Strickland*'s prejudice standard and a
more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Dorsey v.
Vandergriff*, 30 F.4th 752, 757 (8th Cir. 2022) (quoting *Harrington*, 562 U.S. at 111–12).

### a.     Points 7[2] and 20:  failure to interview and call witnesses

In point 7, Clark alleges trial counsel failed to review Canterbury's deposition with Clark
or interview witnesses—specifically Christopher Shunk—regarding their interactions with
Canterbury. Doc. 1-9 at 10. And in point 20, Clark again alleges trial counsel failed to
investigate and call Shunk. Doc. 1-6 at 97. The state court rejected this claim when raised in
Clark's Rule 29.15 motion, *id.* at 142–43, and this Court does the same.

Clark bears "the burden of proving that his counsel's performance fell below an objective
standard of reasonableness." *Wing v. Sargent*, 940 F.2d 1189, 1191 (8th Cir. 1991) (first citing
*Strickland*, 466 U.S. at 691; and then citing *Laws v. Armontrout*, 863 F.2d 1377, 1387 (8th Cir.
1988) (en banc)). But "[t]he decision not to call a witness is a 'virtually unchallengeable'
decision of trial strategy." *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005) (quoting
*United States v. Davidson*, 122 F.3d 531, 538 (8th Cir. 1997)).

Relying upon Missouri law, the Missouri Court of Appeals found that Clark "failed to
meet his burden to establish any of the elements required for relief on this point." Doc. 1-6
at 143. He "offered no statements from these witnesses, no depositions were submitted to the
court, nor did any of them testify at the PCR hearing." *Id.* Rather, Clark "offered only his own
beliefs about what the witnesses might testify to." *Id.* Because of this, the court denied Clark's
claim.

---

[2] To be consistent with both parties' filings, the Court omits "point 6." *See, e.g.*, doc. 15 at 24 ("As petitioner does
not seem to have a claim 6, Respondent moves to claim 7 for consistency between the pleadings").

This finding comports with the *Strickland* standard:  "speculation as to how the others . . . would have testified fails to meet [the petitioner's] burden of proof that counsel's assistance was ineffective."  *Wing*, 940 F.2d at 1191 (8th Cir. 1991) (citations omitted).  Thus, the Court denies points 7 and 20.

### b.    Point 8:  failure to preserve and raise issue

In point 8, Clark brings ineffective-assistance-of-counsel claims against both trial and appellate counsel for failing to preserve and then raise the issue in point 1:  the sustained objection during Canterbury's cross-examination.  Doc. 1-9 at 10.  The state court rejected this claim when raised in Clark's Rule 29.15 motion, doc. 1-6 at 141, and this Court does the same.

To prevail on *Strickland*'s prejudice prong, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Further, to grant relief, this Court must find the state court's adjudication objectively unreasonable.  *Lockyer*, 538 U.S. at 75.  When Clark appealed the trial court's sustaining of the state's objection, the appellate court reviewed for plain error and found none:

> The trial court did not plainly err in limiting [Clark]'s cross-examination of Canterbury because [Clark] was able to question Canterbury at length about his drug use, his illegal purchase of prescription pain medications, and the failure of the police to arrest him for those transactions.  Furthermore, [Clark] cannot show he was prejudiced by the limitation.  Although the court limited defense counsel's cross-examination regarding whether Canterbury received favorable treatment from police officers, Canterbury testified no one promised him anything in exchange for his work as an informant, including the dismissal of criminal charges.

Doc. 15-10 at 7–8.  Based on this finding, the state court denied Clark's ineffective-assistance-of-counsel claim.  Doc. 1-6 at 141.  Ultimately, the state court did "not believe [Clark] would have prevailed on appeal had that issue been properly preserved, and thus [Clark] suffered no prejudice from the failure to preserve the issue."  *Id*.  Having reviewed the state court's factual

20

and legal analysis, this Court does not find the state court's adjudication objectively unreasonable.  Therefore, the Court denies point 8.

### c.    Point 9:  trial counsel's conflict of interest

In point 9, Clark alleges trial counsel (1) "labor[ed] under an actual conflict of interest"; (2) failed "to follow the court's instructions to notice up . . . Clark's pro se motions"; and (3) failed to select a fair and impartial jury.  Doc. 1-9 at 11.  The state court rejected the first complaint when raised in Clark's Rule 29.15 motion.  Doc. 1-6 at 143.  But Clark failed to raise the second and third complaints before his Rule 91 petition.

Like the state court, this Court rejects Clark's first complaint.  Clark again fails to establish prejudice by demonstrating "a reasonable probability" of a different outcome, *Strickland*, 466 U.S. at 687, 694, and fails to prove—or even argue—the objective unreasonableness of the state court's adjudication, *Lockyer*, 538 U.S. at 75.  Here, the state court assessed the evidence and found no prejudice:

> There was no evidence offered at the PCR hearing regarding any actual conflict of interest.  There was no evidence that [trial counsel] personally represented any co-defendant.  From [trial counsel]'s testimony, [Clark]'s case was "conflicted out" of her office because of an internal policy regarding co-defendants rather than an actual conflict of interest.  Further, it does not appear from the record that [trial counsel] ever entered her appearance on [Clark]'s behalf nor did she do anything other than take [Clark]'s application for Public Defender services, prior to second-chairing [the case].  Moreover, [Clark] has established no prejudice from any alleged conflict of interest.

Doc. 1-6 at 143.  Based on this analysis, the Court cannot find the state court's adjudication objectively unreasonable.  Thus, the Court denies the first complaint.

Further, the Court rejects the second and third complaints as procedurally defaulted.  Typically, if "a state habeas petitioner fails to raise a claim on appeal or in a motion for post conviction relief . . . , the Missouri courts will not review it."  *Sloan v. Delo*, 54 F.3d 1371, 1382 (8th Cir. 1995); *see also Reese v. Delo*, 94 F.3d 1177, 1181 (8th Cir. 1996) (rejecting contention

that "rais[ing] [ineffective-assistance claim] in [a] state habeas corpus petition pursuant to Missouri Supreme Court Rule 91" cures failure to advance claim on appeal (citing *State ex rel. Simmons v. White*, 866 S.W.2d 443, 444 (Mo. 1993)). To overcome this bar, the claim must raise "a jurisdictional issue or present[] an 'issue of manifest injustice resulting from rare and extraordinary circumstances and warranting the relief requested.'" *Sloan*, 54 F.3d at 1382 (quoting *White*, 866 S.W.2d at 444).

Here, Clark failed to raise his second and third complaints on appeal, *see* doc. 1-6 at 71–76; rather, he raised them in his Rule 91 petition, *see* doc. 1-9 at 11. Further, neither exception applies here. "Ineffective assistance of counsel does not affect a court's jurisdiction, and [Clark]'s claims do not represent the rare case of manifest injustice." *Sloan*, 54 F.3d at 1382. Thus, his second and third complaints are procedurally defaulted. For these reasons, the Court denies point 9.

### d.    Point 10:  failure to object to prosecutor's expression of personal opinion

In point 10, Clark complains "trial counsel failed to object to the prosecutor's improper expressions of personal opinion in his opening statement." Doc. 1-9 at 11. While Clark raised this claim in his Rule 91 petition, *see id.* at 23–24, he failed to raise it on appeal. Like the claims in point 9, that failure bars this claim. *Sloan*, 54 F.3d at 1382. Thus, the Court denies point 10 as procedurally defaulted.

### e.    Point 11:  failures regarding chain of custody

In point 11, Clark alleges trial counsel failed to properly investigate, prepare a defense regarding, and challenge the chain of custody for three groups of evidence: (1) "the seven chunks of heroin detailed in Sergeant Crump's report on February 15, 2015"; (2) "the heroin and gold coin detailed in Trooper Jannin's report on February 17, 2015"; and (3) "the $90 and $10

bills detailed in the Trooper Jannin's and Sergeant Ellsworth's reports on February 18, 2015." Doc. 1-9 at 12.  Clark failed to raise the first and second complaints before his Rule 91 petition. And the state court rejected the third complaint when raised in Clark's Rule 29.15 motion.  Doc. 1-6 at 143.

Like points 9 and 10, Clark's failure to raise his first and second complaints before his Rule 91 petition bars review.  *Sloan*, 54 F.3d at 1382.  Thus, the Court denies those complaints as procedurally defaulted.

Next, like the state court, this Court rejects Clark's third complaint.  Clark again fails to establish prejudice by demonstrating "a reasonable probability" of a different outcome, *Strickland*, 466 U.S. at 687, 694, and fails to prove—or even argue—the objective unreasonableness of the state court's adjudication, *Lockyer*, 538 U.S. at 75.  Here, the state court assessed the evidence and found no prejudice:

> There is no evidence in the record of any actual, intentional malfeasance by any witness regarding this evidence.  Moreover, [Clark] can show no prejudice from trial counsel's failure to investigate what, by all appearances and by the sworn testimony of Trooper Jannin, was a typographical error.  The issue of the erroneous serial number in the police report was first raised *by the State*.  Moreover, the State also submitted a photograph of the bill in question prior to the controlled buy, and after it was later retrieved from [Clark]'s pocket.

Doc. 1-6 at 143 (emphasis in original) (citations omitted).  Based on this analysis, the Court cannot find the state court's adjudication objectively unreasonable.  Thus, the Court denies the third complaint and denies point 11.

### f.    Point 12:  failure to properly present speedy-trial violation

In point 12, Clark brings ineffective-assistance-of-counsel claims against both trial and appellate counsel for failing to properly present the issue in point 5:  the alleged speedy-trial violation.  Doc. 1-9 at 13.  Specifically, Clark argues that trial counsel failed to present the prejudice caused to Clark and that appellate counsel failed to "identify in Mr. Clark's opening

brief the actual prejudice." *Id.* The state court rejected this claim when raised in Clark's Rule 29.15 motion, doc. 1-6 at 141–42, and this Court does the same.

Clark again fails to establish prejudice by demonstrating "a reasonable probability" of a different outcome, *Strickland*, 466 U.S. at 687, 694, and fails to prove—or even argue—the objective unreasonableness of the state court's adjudication, *Lockyer*, 538 U.S. at 75. As previously discussed, the Missouri Court of Appeals analyzed the prejudice alleged by Clark and found it "insubstantial." Doc. 15-10 at 18–19. When ruling on Clark's Rule 29.15 motion, another Missouri court concurred and addressed an additional claim of prejudice:  the prejudice of a parole set-back. Doc. 1-6 at 141–42. The second court found the additional prejudice claim "insubstantial." *Id.* And then the court found Clark "was not prejudiced" and rejected his ineffective-assistance claim. *Id.*

Having reviewed the state court's factual and legal analysis, this Court does not find the state court's adjudication objectively unreasonable. Thus, the Court denies point 12.

### g.    Points 15 and 16: failure to object to admission of tape-recorded conversations

In points 15 and 16, Clark complains trial counsel failed to object to the admission of tape-recorded conversations (exhibits 4, 7, and 12) through the testimony of Officers Crump and Jannin. *See id.* at 97. The state court rejected these claims when raised in Clark's Rule 29.15 motion, *id.* at 138, and this Court does the same.

Clark again fails to establish prejudice by demonstrating "a reasonable probability" of a different outcome, *Strickland*, 466 U.S. at 687, 694, and fails to prove—or even argue—the objective unreasonableness of the state court's adjudication, *Lockyer*, 538 U.S. at 75. The state court found no prejudice:

> Although trial counsel did not object to the admission of State's Exhibits 4, 7, and 12 to be admitted with no proper foundation laid, it is clear from the record that the

exhibits would have been admitted during the trial, and thus [Clark] was not prejudiced by their admission. . . . Even if the recordings had not been admitted based on the testimony of the officers, the State could and would have been able to admit them with the testimony of [Canterbury], and [Clark] is therefore not prejudiced by any failure to object at the admission of the recordings.

Doc. 1-6 at 138.  Considering the state court's review of the facts and law, this Court does not find the state decision objectively unreasonable.  Thus, the Court denies points 15 and 16.

### h.    Point 17:  improper stipulation

In point 17, Clark alleges trial counsel improperly stipulated to the admission and authenticity of certified lab reports, "conceding an element of the offense." *Id.* at 97.  The state court rejected this claim when raised in Clark's Rule 29.15 motion, *id.* at 138–39, and this Court does the same.

First, the Missouri court determined that a "stipulation is generally a matter of trial strategy and will not support a claim of ineffective assistance of counsel." *Id.* at 139.  The Court does not find this objectively unreasonable.  *See, e.g.*, *Lemon v. United States*, 335 F.3d 1095, 1096 (8th Cir. 2003) ("[C]ounsel made the decision to stipulate as part of a reasonable trial strategy in which counsel sought to disprove the element of possession rather than the drug type.").  Second, the court found that when a "defendant's primary defense at trial is . . . that he had not taken part in the actual sale of [the substance], whether the substance is what the State purports it to be is irrelevant to his defense and stipulation to its admission is not prejudicial." Doc. 1-6 at 139.  Again, the Court does not find this objectively unreasonable.  *See, e.g.*, *Lemon*, 335 F.3d at 1096.   Thus, the Court denies point 17.

### i.    Point 18:  failure to object to hearsay and opinion testimony

In point 18, Clark complains trial counsel failed to object to hearsay and opinion testimony by Officers Crump, Jannin, and Ellsworth.  Doc. 1-6 at 97.  The state court rejected this claim when raised in Clark's Rule 29.15 motion, *id.* at 139–40, and this Court does the same.

Clark again fails to establish prejudice by demonstrating "a reasonable probability" of a different outcome, *Strickland*, 466 U.S. at 687, 694, and fails to prove—or even argue—the objective unreasonableness of the state court's adjudication, *Lockyer*, 538 U.S. at 75. First, the state court reviewed the transcript and found that the hearsay rule did not apply to Ellsworth's testimony: "Ellsworth's testimony regarding the recorded statements was limited to his review of the recordings and things that were said by [Clark] on the recordings. Sergeant Ellsworth did not testify regarding any statements made by [Canterbury]." Doc. 1-6 at 139. Second, the court determined Crump's and Jannin's testimony regarding statements made by Canterbury were not hearsay and caused no prejudice:

> Here, [Canterbury] did testify. Moreover, the questions asked of the officers prior to the answers in which they included hearsay statements of [Canterbury], were not designed to elicit any hearsay testimony or any testimony regarding the identity of [Clark], which is evidence of the statements not being offered for the truth of the matter asserted. For example, Sergeant Crump was asked, "How did you become involved with [Canterbury] on that date?" The very next question was, "After you received that information, what did you do?" Trooper Jannin's statement was made after the jury had heard the second recording, and referenced that recording. Finally . . . [Canterbury] did testify and was thus subject to cross examination on the veracity of any statements, or as to whether he ever made it in the first instance.

Doc. 1-6 at 140. Considering the state court's review of the facts and law, this Court does not find the state decision objectively unreasonable. Thus, the Court denies point 18.

### j.    Point 19:  improper reference to Clark as a heroin possessor

In point 19, Clark complains that trial counsel, in closing argument, asserted Clark was a heroin possessor. *Id.* at 97. The state court rejected this claim when raised in Clark's Rule 29.15 motion, *id.* at 140–41, and this Court does the same.

To prevail on Strickland's performance prong, Clark must overcome the "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance" and must establish that counsel's performance "amounted to

incompetence." *Harrington*, 562 U.S. at 104–05 (quoting *Strickland*, 466 U.S. at 689–90).  With this, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S at 690.  Further, to grant relief, this Court must find the state court's adjudication objectively unreasonable. *Lockyer*, 538 U.S. at 75.

The state court rejected Clark's interpretation of counsel's closing argument and found counsel's performance reasonable:

> Trial counsel did not concede that [Clark] possessed any controlled substances on the dates of the incidents involved in the trial.  Trial counsel specifically attacked the State's evidence on each count in her closing argument, in arguing that the State could not prove [Clark] delivered heroin nor possessed any of the other substances seized in the search.  It is clear from the record that trial counsel's strategy—to argue [Clark]'s innocence from this perspective, rather than to argue that [Clark] was not even present, particularly in light of the testimony of four people who observed [Clark] at the scene—was a sound, though ultimately unsuccessful, trial strategy.  Trial counsel did not, as [Clark] suggests in his amended motion, admit [Clark] was a "heroin possessor."

Doc. 1-6 at 141.  Considering the state court's review of the facts and law, this Court does not find the state decision objectively unreasonable.  Thus, the Court denies point 19.

### 3.    Ground 3

As ground 3, Clark incorporates two points from his previously denied state habeas petition.  The Court addresses both below.

#### a.    Point 13:  excessive and disproportionate sentence

In point 13, Clark lists various constitutional rights but ultimately argues that the State erred in denying his habeas petition because his sentence was "excessive and disproportionate." Doc. 1-12 at 11 (alleging deprivations of "due process of law, fundamental fairness, equal protection of law, reliable sentencing, effective assistance of counsel, and freedom from cruel and unusual punishment, as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments").  Although Clark refers to federal constitutional rights, he takes issue with the

Missouri Court of Appeals' interpretation of state law—specifically, the retroactive application of a new Missouri sentencing scheme. *See id.* at 11–14.

The Court cannot review this claim. "A federal court may not re-examine a state court's interpretation and application of state law." *Schleeper v. Groose*, 36 F.3d 735, 737 (8th Cir. 1994) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). The Missouri Court of Appeals rejected Clark's argument by relying on Missouri Supreme Court precedent: "Having carefully reviewed and considered [Clark]'s filings, and related exhibits and court records, the Court concludes that [Clark] was subject to the [Missouri] statutes authorizing sentencing that were in force and effect at the time of his committed offenses." Doc. 15-33 at 1 (citing *Mitchell v. Phillips*, 596 S.W.3d 120 (Mo. 2020)). Thus, the Court denies point 13.

### b.    Point 14: failure to comply with Missouri Supreme Court Rule

In point 14, like point 13, Clark raises a state-law issue: "The [denial of habeas relief] is clearly erroneous because the judgment entered by the trial court on May 30, 2017[,] was an amended judgment, not an order nunc pro tunc[;] therefore, the trial court erred in entering the judgment without complying with the requirements of Missouri Supreme Court Rule 75.01." Doc. 1-12 at 14. Previously, the Missouri Court of Appeals, relying upon Missouri Supreme Court precedent, held that the trial court's amended judgment "was not a new judgment, but was instead an authorized nunc pro tunc judgment pursuant to Rule 29.12(c)." Doc. 15-33 at 1 (citing *State ex rel Zinna v. Steele*, 301 S.W.3d 510 (Mo. 2010)). Because this claim relates to the interpretation and application of state law, the Court cannot review it. *See Schleeper*, 36 F.3d at 737 (citing *McGuire*, 502 U.S. at 67–68). Thus, the Court denies point 14.

### 4.    Ground 5 (point 21): due-process violation

As ground 5, Clark raises a single point. Specifically, he alleges a due-process violation based on "cumulative prejudice":

28

> Clark raises over twenty individual trial errors, accross [sic] several different categories in this Petition and Attachments A–M. The cumulative prejudice is based herein, and therein, the trial court erro[r]s rendering the result of his criminal trial fundamentally unfair in their unique sym[m]etry.

Doc. 1 at 12. The Court finds that this claim lacks merit.

The Eighth Circuit does not recognize cumulative-error claims: "cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own." *Scott v. Jones*, 915 F.2d 1188, 1191 (8th Cir. 1990) (citing *Byrd v. Armontrout*, 880 F.2d 1, 11 (8th Cir. 1989)); *see also Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996) ("Errors that are not unconstitutional individually cannot be added together to create a constitutional violation. Neither cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief." (citations omitted)). Because Clark brings a cumulative-error claim not cognizable under Eighth Circuit precedent, the Court denies point 21.

## IV. Certificate of appealability

The Court finds that Clark has not made a "substantial showing of the denial of a constitutional right" as is necessary for the Court to issue a certificate of appealability. 28 U.S.C. § 2253(c)(2); *see also Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (explaining that a "substantial showing" is a showing that the "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings"). Accordingly, the Court does not issue a certificate of appealability for the claims raised in Clark's petition.

## V. Clark's contempt motion

The Court now addresses Clark's motion for contempt. *See* doc. 14. After the Court granted Falkenrath's motion for extension of time, *see* docs. 12–13, Clark filed a contempt motion against Falkenrath for allegedly violating the case-management order, doc. 14 at 1–2.

Because the Court granted Falkenrath's motion, the Court finds that Falkenrath did not violate any of its orders.  Thus, the Court denies Clark's motion.

## VI.    Conclusion

The Court denies Clark's [1] Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus and dismisses the petition with prejudice.  Further, the Court denies Clark's [14] Motion for Contempt.  A separate order of dismissal accompanies this Memorandum and Order.  The Court does not issue a certificate of appealability.

So ordered this 26th day of July 2024.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE

**Appendix A**

| Clark Filing | State Claim | Federal Claim |
|---|---|---|
| Appeal filed in *State v. Clark*, No. ED105347 (Mo. Ct. App.) | "The trial court erred in sustaining the State's objection during the cross examination of Mark Canterbury because the questioning by Clark's counsel regarding Canterbury's drug use was relevant to the issue of Canterbury's credibility, in that it established that Canterbury perceived that he would get lenient treatment from police officers in exchange for testifying against Clark. . . ." | Incorporated as ground 1, point 1 |
| | "The trial court erred in denying Defendant's motion for judgment of acquittal at the close of the State's evidence with respect to Counts IV, V, and VI because the State failed to introduce any evidence that Clark knowingly possessed methamphetamine (Count IV), oxycodone (Count V), or syringes (Count VI), in that none of the drugs or paraphernalia was in his actual possession at the time of the February 18, 2015 search. . . ." | Incorporated as ground 1, point 2 |
| | "The trial court erred in denying Defendant's motion for judgment of acquittal at the close of all evidence with respect to Count VI because the State failed to introduce evidence to support an essential element of the claim, in that that [sic] State did not establish that Clark intended to use the syringes for methamphetamine, as set out in the jury instructions. . . ." | Incorporated as ground 1, point 3 |
| | "The trial court erred in denying Clark's motion for relief of improper joinder because the possessory crimes—counts IV through VI—were not "connected" with the distribution crimes (Counts I-III), in that they arose on different dates, and were of substantially different character than those alleged in counts I-III. . . ." | Incorporated as ground 1, point 4 |
| | "The Court erred in denying Clark's motion to dismiss for lack of a speedy trial because Clark was denied his right to a speedy trial as guaranteed by the sixth and fourteenth amendments to the United State Constitution, and Article I, Section 18(a) of the Missouri Constitution, in that a 540-day delay from the date of arrest to trial, and a 275-day delay from indictment to trial, was presumptively prejudicial, Clark did not contribute to the delay, and Clark's trial and the ordinary nature of the alleged offense indicate the Respondent's delay in going to trial was unjustified, unnecessary, and prejudicial to Clark. . . ." | Incorporated as ground 1, point 5 |

| Missouri Criminal Procedure Form No. 40 in *Clark v. State*, No. 18SF-CC00110 (Mo. Ct. App.) | "[I]neffective assistance of trial counsel . . . failing to object to the admission of State[']s Exhibit 4 (February 13, 2015)" | Incorporated as ground 4, point 15 |
|---|---|---|
| | "[I]neffective assistance of trial counsel . . . failing to object to the admission of State[']s Exhibit 7 and 12 (February 17 and 18, 2015)" | Incorporated as ground 4, point 16 |
| | "[I]neffective assistance of trial counsel . . . conceding to an element of the offense by stipulation" | Incorporated as ground 4, point 17 |
| | "[I]neffective assistance of trial counsel . . . fa[i]ling to object to inadmissible hearsay and opinion testimony by Officers Crump, Jannin and Ellsworth" | Incorporated as ground 4, point 18 |
| | "[I]neffective assistance of trial counsel . . . asserting [Clark] was in heroin possession" | Incorporated as ground 4, point 19 |
| | "[I]neffective assistance of trial counsel . . . failing to call Christopher Shunk" | Incorporated as ground 4, point 20 |
| Appeal of habeas-petition denial in *Clark v. Falkenrath*, WD84860 (Mo. Ct. App.) | "The Motion Court clearly erred in denying Mr. Clark's 29.15 motion for postconviction relief after an evidentiary hearing because he proved by a preponderance of evidence that he was denied his rights to due process of law and effective assistance of counsel as guaranteed under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, §§ 10 and18(a) [sic] of the Missouri Constitution in that trial counsels [sic] failed to act reasonably as they did not review Mark Canterbury's (A/K/A CI #6433) deposition with Mr. Clark or interview any witnesses, specifically Christopher Shunk, regarding the confidential informant[']s interactions with them prior to making a motion in limine to exclude it during the pretrial hearing, which was granted by the court. Trial counsels [sic] failure to review this evidence with Mr. Clark and subpoena witnesses, specifically Christopher Shunk, prejudiced him thereby his uninformed decision to proceed to trial and being unable to assist in his defense without reviewing this evidence. Had trial counsels [sic] performed adequate investigation he could have rebutted CI #6433's testimony, the jury would have found out CI #6433 was lying, found him to | Incorporated as ground 2, point 7 |

| | | |
|---|---|---|
| | be not credible, and acquitted Mr. Clark of the offenses against him. This court must reverse the Motion Court's judgment and remand for new trial. . . ." | |
| | "The Motion Court clearly erred in denying Mr. Clark's 29.15 motion for postconviction relief after an evidentiary hearing because he proved by a preponderance of evidence that he was denied his rights to due process of law and effective assistance of trial counsel and appellate counsel as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, §§ 10 and 18(a) of the Missouri Constitution in that trial counsel and appellate counsel failed to act reasonably when: (1) trial counsel failed to preserve the claim on the objection sustained by the trial court regarding her questions concerning CI #6433's drug use for the purpose of impeaching his credibility in the motion for new trial, (2) appellate counsel failed to raise the claim presented in trial counsel's motion for new trial, and instead presented a different claim on appeal which was also not preserved. But for trial and appellate counsel's ineffectiveness for failing to raise this issue, the outcome of Mr. Clark's trial and appeal would have been different. . . ." | Incorporated as ground 2, point 8 |
| | "The Motion Court erred in denying Mr. Clark's Rule 29.15 motion because he proved by a preponderance of evidence he was entitled to post-conviction relief in that Counsel Geralyn Ruess was ineffective by laboring under an actual conflict of interest which resulted in abandonment of her professional and ethical duties. Counsel failed to act as reasonably competent counsel under similar circumstances would have, and no reasonable trial strategy reason justified her failure to follow the court's instructions to notice up Mr. Clark's pro se motions. But for counsel's failure, there is a reasonable probability that Mr. Clark's motions would have been granted and the case dismissed. Competent counsel would also have selected fair and impartial jury which there is a reasonable probability would have reached a different verdict. Counsel's ineffectiveness and the Motion Court's inability to make rulings on the motions denied Mr. Clark's rights to access the court, to due process of law and equal protection under the law, to effective assistance of counsel, to a fair and impartial jury, and to a fair trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 10 and 18(a) and | Incorporated as ground 2, point 9 |

| | | |
|---|---|---|
| | 22(a) of the Missouri Constitution. This court must reverse the Motion Court's judgment and remand for new trial. . . ." | |
| | "The Motion Court plainly erred in ruling that Mr. Clark received effective assistance of counsel as guaranteed under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 18(a) of the Missouri Constitution, in that trial counsel failed to object to the prosecutor's improper expressions of personal opinion in his opening statement. Reasonably effective counsel would have made this objection, Mr. Clark was prejudiced because had the objection been made, there is a reasonable probability of a different outcome. This court must reverse the Motion Court's judgment and remand for new trial. . . ." | Incorporated as ground 2, point 10 |
| | "The Motion Court clearly erred in denying Mr. Clark's 29.15 Motion for postconviction relief after an evidentiary hearing because he proved by a preponderance of evidence that he was denied his rights to due process of law and effective assistance of trial counsel as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, §§ 10, 14 and 18(a) of the Missouri Constitution in that trial counsels [sic] failed to exercise the customary skill and diligence that another reasonably competent attorney would have under the same or similar circumstances, by: (1) failing to properly investigate, prepare a defense, and challeng[e] the chain of custody of the seven chunks of heroin detailed in Sergeant Crump's report on February 15, 2015, (2) failing to properly investigate, prepare a defense, and challeng[e] the chain of custody of the heroin and gold coin detailed in Trooper Jannin's report on February 17, 2015, (3) failing to properly investigate, prepare a defense, and challeng[e] the chain of custody of the $90 and $10 bills detailed in the Trooper Jannin's and Sergeant Ellsworth's reports on February 18, 2015. Reasonable trial counsels [sic] would have developed and elicited evidence from these witnesses showing that the chain of custody was lacking and that the integrity of the evidence had not been preserved. Mr. Clark was prejudiced because had this evidence been offered, there is a reasonable probability of a different outcome. This court must reverse the Motion Court's judgment and remand for new trial. . . ." | Incorporated as ground 2, point 11 |

| | | |
|---|---|---|
| | "The Motion Court clearly erred in denying Mr. Clark's 29.15 motion for postconviction relief after an evidentiary hearing because he proved by a preponderance of evidence that he was denied his rights to due process of law, right to a speedy trial, right to be free from cruel and unusual punishment and effective assistance of counsel as guaranteed under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, §§ 10 and 18(a) of the Missouri Constitution, in that trial counsel and appellate counsel failed to act reasonably when:  (1) trial counsels [sic] were ineffective by failing to present, through evidentiary hearing, the prejudice caused to movant as a result of the State's and court's failure to grant his constitutional right to a speedy trial and prejudice resulting from the trial court's denial of his motion to dismiss the criminal charges because of a clear violation of his constitutional right to a speedy trial.  (2) Appellate counsel was ineffective for his failure to identify in Mr. Clark's opening brief the actual prejudice previously described and pled by movant in his pro se filings with the trial court, but for trial and appellate counsel's ineffectiveness for failing to raise this issue, the outcome of Mr. Clark's trial and appeal would have been different.  This court must reverse Mr. Clark's convictions and sentences and remand this matter back to the trial court with directions to dismiss the information with prejudice. . . ." | Incorporated as ground 2, point 12 |
| Writ of habeas corpus filed in *Clark v. Falkenrath*, No. SC100155 (Mo.) | "The order entered in Western District cause WD86295 deprived Clark of due process of law, fundamental fairness, equal protection of law, reliable sentencing, effective assistance of counsel, and freedom from cruel and unusual punishment, as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 10, 18(a) and 21 of the Missouri Constitution in that a comparison of Clark's case with all other similar cases, including those resulting in a life sentence, demonstrate that Clark's sentence is excessive and disproportionate. . . ." | Incorporated as ground 3, point 13 |
| | "The order entered in Western District cause WD86295 is clearly erroneous because the judgment entered by the trial court on May 30, 2017 was an amended judgment, not an order nunc pro tunc, therefore, the trial court erred in entering the judgment without complying with the requirements of Missouri Supreme Court Rule 75.01." | Incorporated as ground 3, point 14 |